## MILLER *v.* WILSON, SHERIFF OF RIVERSIDE COUNTY, STATE OF CALIFORNIA.

### ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 112. Argued January 12, 1915.—Decided February 23, 1915.

The liberty of contract guaranteed by the due process clause of the Fourteenth Amendment is freedom from arbitrary restraint—not immunity from reasonable regulation to safeguard the public interest.

In determining the constitutionality of a state police statute the question is whether its restrictions have reasonable relation to a proper purpose; and reasonable regulations limiting the hours of labor of women are within the scope of legislative action. *Muller* v. *Oregon*, 208 U. S. 412; *Riley* v. *Massachusetts*, 232 U. S. 671; *Hawley* v. *Walker*, 232 U. S. 718.

While the limitation of the hours of labor of women may be pushed to an indefensible extreme, the limit of reasonable exertion of the protective authority of the State is not overstepped and liberty of contract unduly abridged by a statute prescribing eight hours a day or a maximum of forty-eight hours a week.

The legislature of a State is not debarred from classifying according to

general considerations and with regard to prevailing conditions, otherwise there could be no legislative power to classify.

The legislature is free to recognize degrees of harm and may confine its restrictions to those classes where it deems the need is greatest, and if the law hits an evil where it is most felt the prohibition need not be all embracing. *Keokee Coke Co.* v. *Taylor*, 234 U. S. 227.

The statute of California of 1911 prohibiting the employment of women in certain businesses including hotels is not unconstitutional as to women employed in hotels, either as an unwarranted invasion of liberty of contract or as denying the equal protection of the law on the ground of unreasonable discrimination because of the omissions of certain classes of female laborers from its operation, or because the classification is based on the employé's business and not upon the character of the employé's work.

162 California, 687, affirmed.

THE facts, which involve the constitutionality under the Fourteenth Amendment of the Women's Eight Hour Labor Law of California, are stated in the opinion.

*Mr. Frank P. Flint* and *Mr. Henry S. Van Dyke* for plaintiff in error, submitted:

The restrictions imposed by the Act upon women and their employers as to their freedom of contract in certain designated employments are not reasonably necessary, and are not such a necessary invasion of freedom of contract as will be justified under the sanction of the police power or of any other constitutional power.

The legislation is not necessary to safeguard the health of any considerable class nor is it justified by the needs of the community as a whole. As in *Ritchie* v. *Wyman*, 214 Illinois, 509, the police power's exercise must be reasonable and not confiscatory, like a war power, and must be absolutely necessary to the public health or safety. Bierly's Police Power, p. 13; *People* v. *Commonwealth*, 9 Michigan, 285; *Smiley* v. *McDonald*, 42 Nebraska, 5; *Railroad Co.* v. *State*, 47 Nebraska, 549; Russell's Police Powers, p. 34.

And see *Lawton* v. *Steele*, 152 U. S. 133; Brannon's Fourteenth Amendment, pp. 172, 202.

The limitation to eight hours a day and particularly the limitation to forty-eight hours a week is unnecessary and unreasonable as applied to hotels and many of the other enumerated employments. To hold such legislation unconstitutional is to promote humanitarian legislation for women, for it makes possible such humanitarian legislation as is consistent with their liberty and their means of livelihood; while, on the contrary, the present law, as to many employments, by an unnecessary curtailment of their usefulness, and therefore of their earning capacity, does more harm than good. *Lochner* v. *New York*, 198 U. S. 45, 61; *Ex parte Kuback*, 85 California, 274.

There is nothing in the ordinary labor, by men of full age for more than eight hours a day, that calls for prohibition in the interest of the public health, the public safety, the public morals, or the public welfare. *Lochner* v. *New York, supra.*

This doctrine is affirmed by every court in the union having occasion to pass upon the question, except in certain cases on the women's employment acts which are bad on principle and on precedent. *Seattle* v. *Smyth*, 22 Washington, 327; *In re Morgan*, 26 Colorado, 415.

Only when an occupation possesses such characteristics of danger to health of those engaged therein as to justify the legislature in concluding that the welfare of the community demands a restriction, can the hours of labor for men be limited by legislative enactment. *Re Martin*, 157 California, 51, 55.

For the history of legislation and adjudication in this country on limitation of hours of employment for women, see *Commonwealth* v. *Hamilton Mfg. Co.*, 120 Massachusetts, 383; *Holden* v. *Hardy*, 169 U. S. 366; *Commonwealth* v. *Beatty*, 15 Pa. Sup. Ct. 5; *Wenham* v. *State*, 65 Nebraska, 395; *State* v. *Buchanan*, 29 Washington, 604;

*Muller* v. *Oregon,* 208 U. S. 412; *Commonwealth* v. *Riley,* 97 N. E. Rep. 367; *State* v. *Somerville,* 122 Pac. Rep. 324; *People* v. *Elerding,* 98 N. E. Rep. 982; *People* v. *Chicago,* 100 N. E. Rep. 194; *State* v. *Newman Lumber Co.,* 59 So. Rep. 923; *Matter of Jacobs,* 98 N. Y. 98; *People* v. *Williams,* 189 N. Y. 131; *Low* v. *Rees Printing Co.,* 41 Nebraska, 127; *Burcher* v. *People,* 41 Colorado, 495.

The Act is vitiated by manifold and fatal discriminations, and is therefore unconstitutional.

The first and most obvious discrimination is the express exception of all women employed in harvesting fruit or vegetables. Several considerable classes of women employés, whose employments are in no wise distinguishable in any particulars from many of those included,—e. g., stenographers, clerks and assistants employed by the professional classes and all domestic servants, are totally omitted. *Cotting* v. *Godard,* 183 U. S. 79; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540.

The freedom to contract is protected from unreasonable restriction, similarly with every other proper freedom, by the Fourteenth Amendment. *Allgeyer* v. *Louisiana,* 165 U. S. 578–589; *State* v. *Peel Splint Coal Co.,* 36 W. Va. 856; *State* v. *Goodwill,* 33 W. Va. 179; *Barbier* v. *Connolly,* 113 U. S. 27; *Gulf &c. Ry.* v. *Ellis,* 165 U. S. 150; *Bell's Gap R. R.* v. *Pennsylvania,* 134 U. S. 237; *Low* v. *Rees Printing Co.* (Neb.), 59 N. W. Rep. 362; *Dougherty* v. *Austin,* 94 California, 620; *Darcy* v. *San Jose,* 104 California, 642; *Lodi* v. *State,* 51 N. J. L. 402; *Hellman* v. *Shoulters,* 114 California, 147; *Budd* v. *Hancock,* 66 N. J. L. 135; *Ex parte Sohncke,* 148 California, 262, 267.

Statutes have been held unconstitutional as violating the constitutional inhibitions against special laws, the classification being held arbitrary and without reasonable basis in *Slocum* v. *Bear Valley Co.,* 122 California, 555; *Johnson* v. *Goodyear Mining Co.,* 127 California, 417; *Krause* v. *Durbrow,* 127 California, 681, 685; *Beveridge* v.

*Lewis,* 137 California, 619, 623; *Ex parte Sohncke,* 148 California, 262; *Ex parte Westerfield,* 55 California, 550, 552, 553.

As to the discrimination between hotels and boarding houses and as to what constitutes an inn or hotel see *Pinkerton* v. *Woodward,* 33 California, 557; *Fay* v. *Pacific Improvement Co.,* 93 California, 253, 259; Schouler on Bailments, 253; *Cromwell* v. *Stephens* (N. Y.), 2 Daly, 15, 17, 23; *Kelly* v. *Excise Comr's,* 54 How. Prac. 327; *Martin* v. *State Ins. Co.,* 44 N. J. Law, 495; 22 Cyc. 1070; 16 Am. and Eng. Ency. of Law, 510; Beale on Innkeepers and Hotels, pp. 24–25, etc.; *Ex parte Jentzsch,* 112 California, 468, 474.

*Mr. William Denman* and *Mr. Louis D. Brandeis,* with whom *Mr. U. S. Webb,* Attorney General of the State of California, and *Mr. G. S. Arnold* were on the brief, for defendant in error:

California has the power to prevent the gainful employment of women for over eight hours a day in hotels and hospitals, and such a restriction is not an unconstitutional denial of freedom of contract.

The limitation of the number of hours women must work in these two employments has a direct relationship to women's health, and hence to the health of the race as a whole, as well as the safety and health of those she serves.

Women are admittedly weaker than men in the struggle of economic competition and may be protected by legislative enactment against the oppressive bargaining or control of their employer, whether arising from cupidity or such a mistaken philanthropy as that of the hospital here, which admittedly works its undergraduate girl nurses the equivalent of twelve hours a day for a six day week to make a better showing of the number of poor people cared for.

The limitation of the number of hours of woman's labor in gainful occupations to not over a half of her waking time

may check the rapid decline in reproduction of the older American stocks and in any event leaves her free for the development of mind and body for wifehood and mother-hood, and hence insures the increased intelligence and strengthening of the race through the mother, to whom primarily (in California at least) the shaping of the child mind, the directing of his habits and the development of his character is primarily entrusted.

The California statutes in question do not deny equal protection of the law.

The continuous work of women in hotels and hospitals differs essentially from the intermittent seasonal work of women in harvesting, curing, canning or drying of any variety of perishable fruit or vegetables.

There is an essential difference between the work of women in hotels and in lodging houses.

The graduate nurse belongs to a class composed of women mentally better educated, physically better trained, professionally more experienced, and economically better organized to resist oppressive regulation imposed by their employers, and hence may be left free from legislative restriction in the performance of her distinctive functions in the hospital. She is the best fitted to cope with those emergencies arising in the operating room and ward, which often require attendance for more than the eight hour period and hence excepting her from the law provides for such emergencies.

In support of these contentions see *Adams* v. *Milwaukee,* 228 U. S. 572; *Barrett* v. *Indiana,* 229 U. S. 26; Bureau of Education Bulletin, 1912, No. 7.

Boarding houses are excluded from statutes regulating hotels in Delaware, Illinois, Michigan, Maryland, New Jersey, Oregon, Pennsylvania, Utah, Virginia, Washington. See *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *Cotting* v. *Kansas,* 183 U. S. 79; *Doyle* v. *Continental Ins. Co.,* 94 U. S. 535; *Hawley* v. *Walker,* 232 U. S. 718; *Holden* v.

*Hardy,* 169 U. S. 366; *Lindsley* v. *Nat. Gas Co.,* 220 U. S. 76; *McLean* v. *Arkansas,* 211 U. S. 539; *Ex parte Miller,* 162 California, 687; *Muller* v. *Oregon,* 208 U. S. 412; *Patsone* v. *Pennsylvania,* 232 U. S. 138; *People* v. *Elerding,* 254 Illinois, 579; *Quong Wing* v. *Kirkendall,* 223 U. S. 59; *Riley* v. *Massachusetts,* 232 U. S. 671; *Smith* v. *Texas,* 233 U. S. 630; *Wenham* v. *State,* 65 Nebraska, 395.

MR. JUSTICE HUGHES delivered the opinion of the court.

The plaintiff in error, the proprietor of the Glenwood Hotel in the City of Riverside, California, was arrested upon the charge of employing and requiring a woman to work in the hotel for the period of nine hours in a day, contrary to the statute of California which forbade such employment for more than eight hours a day or forty-eight hours a week, Act of March 22, 1911; Stats. 1911, p. 437. It was stated in the argument at this bar that the woman was employed as a chambermaid. Urging that the act was in violation of the state constitution, and also that it was repugnant to the Fourteenth Amendment as an arbitrary invasion of liberty of contract and as unreasonably discriminatory, the plaintiff in error obtained a writ of *habeas corpus* from the Supreme Court of the State. That court, characterizing the statute as one 'intended for a police regulation to preserve, protect, or promote the general health and welfare,' upheld its validity and remanded the plaintiff in error to custody. 162 California, 687. This writ of error was then sued out.

The material portion of the statute, as it then stood, was as follows:

"No female shall be employed in any manufacturing, mechanical or mercantile establishment, laundry, hotel, or restaurant, or telegraph or telephone establishment or office, or by any express or transportation company in this state more than eight hours during any one day or

more than forty-eight hours in one week. The hours of work may be so arranged as to permit the employment of females at any time so that they shall not work more than eight hours during the twenty-four hours of one day, or forty-eight hours during any one week; *provided, however,* that the provisions of this section in relation to the hours of employment shall not apply to nor affect the harvesting, curing, canning or drying of any variety of perishable fruit or vegetable."

As the liberty of contract guaranteed by the Constitution is freedom from arbitrary restraint—not immunity from reasonable regulation to safeguard the public interest—the question is whether the restrictions of the statute have reasonable relation to a proper purpose. *Chicago, Burlington & Quincy R. R.* v. *McGuire,* 219 U. S. 549, 567; *Erie R. R.* v. *Williams,* 233 U. S. 685, 699; *Coppage* v. *Kansas, ante,* pp. 1, 18. Upon this point, the recent decisions of this Court upholding other statutes limiting the hours of labor of women must be regarded as decisive. In *Muller* v. *Oregon,* 208 U. S. 412, the statute of that State, providing that 'no female shall be employed in any mechanical establishment, or factory, or laundry' for 'more than ten hours during any one day,' was sustained as applied to the work of an adult woman in a laundry. The decision was based upon considerations relating to woman's physical structure, her maternal functions, and the vital importance of her protection in order to preserve the strength and vigor of the race. 'She is properly placed . in a class by herself,' said the court, p. 422, 'and legislation designed for her protection may be sustained, even when like legislation is not necessary for men and could not be sustained. . . . Even though all restrictions on political, personal and contractual rights were taken away, and she stood, so far as statutes are concerned, upon an absolutely equal plane with him, it would still be true that she is so constituted that she will rest upon and look to

him for protection; that her physical structure and a proper discharge of her maternal functions—having in view not merely her own health, but the well-being of the race—justify legislation to protect her from the greed as well as the passion of man. The limitations which this statute places upon her contractual powers, upon her right to agree with her employer as to the time she shall labor, are not imposed solely for her benefit, but also largely for the benefit of all. Many words cannot make this plainer. The two sexes differ in structure of body, in the functions to be performed by each, in the amount of physical strength, in the capacity for long continued labor, particularly when done standing, the influence of vigorous health upon the future well-being of the race, the self-reliance which enables one to assert full rights, and in the capacity to maintain the struggle for subsistence.' In *Riley* v. *Massachusetts*, 232 U. S. 671, the plaintiff in error had been convicted upon the charge of employing a woman in a factory at a different hour from that specified in a notice posted in accordance with the statute relating to the hours of labor. The general provision of the statute being found to be valid, the particular requirements which were the subject of special objection were also upheld as administrative rules designed to prevent the circumvention of the purpose of the law. The case of *Hawley* v. *Walker*, 232 U. S. 718, arose under the Ohio act prohibiting the employment of 'females over eighteen years of age' to work in 'any factory, workshop, telephone or telegraph office, millinery, or dressmaking establishment, restaurant or in the distributing or transmission of messages more than ten hours in any one day, or more than fifty-four hours in any one week.' The plaintiff in error was charged with employing a woman in a millinery establishment for fifty-five hours in a week. The constitutionality of the law as thus applied was sustained by this court.

It is manifestly impossible to say that the mere fact that the statute of California provides for an eight hour day, or a maximum of forty-eight hours a week, instead of ten hours a day or fifty-four hours a week, takes the case out of the domain of legislative discretion. This is not to imply that a limitation of the hours of labor of women might not be pushed to a wholly indefensible extreme, but there is no ground for the conclusion here that the limit of the reasonable exertion of protective authority has been overstepped. Nor, with respect to liberty of contract, are we able to perceive any reason upon which the State's power thus to limit hours may be upheld with respect to women in a millinery establishment and denied as to a chambermaid in a hotel.

We are thus brought to the objections to the act which are urged upon the ground of unreasonable discrimination. These are (1) the exception of women employed in 'harvesting, curing, canning or drying of any variety of perishable fruit or vegetable;' (2) the omission of those employed in boarding houses, lodging houses, etc.; (3) the omission of several classes of women employés, as for example stenographers, clerks and assistants employed by the professional classes, and domestic servants; and (4) that the classification is based on the nature of the employer's business and not upon the character of the employé's work.

With respect to the last of these objections, it is sufficient to say that the character of the work may largely depend upon the nature and incidents of the business in connection with which the work is done. The legislature is not debarred from classifying according to general considerations and with regard to prevailing conditions; otherwise, there could be no legislative power to classify. For it is always possible by analysis to discover inequalities as to some persons or things embraced within any specified class. A classification based simply on a general description of work would almost certainly bring within the class

a host of individual instances exhibiting very wide differences; it is impossible to deny to the legislature the authority to take account of these differences and to do this according to practical groupings in which, while certain individual distinctions may still exist, the group selected will as a whole fairly present a class in itself. Frequently such groupings may be made with respect to the general nature of the business in which the work is performed; and, where a distinction based on the nature of the business is not an unreasonable one considered in its general application, the classification is not to be condemned. See *Louisville & Nashville R. R.* v. *Melton*, 218 U. S. 36, 53, 54. Hotels, as a class, are distinct establishments not only in their relative size but in the fact that they maintain a special organization to supply a distinct and exacting service. They are adapted to the needs of strangers and travelers who are served indiscriminately. As the state court pointed out, the women employés in hotels are for the most part chambermaids and waitresses; and it cannot be said that the conditions of work are identical with those which obtain in establishments of a different character, or that it was beyond the legislative power to recognize the differences that exist.

If the conclusion be reached, as we think it must be, that the legislature could properly include hotels in its classification, the question whether the act must be deemed to be invalid because of its omission of women employed in certain other lines of business is substantially the same as that presented in *Hawley* v. *Walker, supra.* There, the statute excepted 'canneries or establishments engaged in preparing for use perishable goods'; and it was asked in that case on behalf of the owner of a millinery establishment why the act should omit mercantile establishments and hotels. The contention as to the various omissions which are noted in the objections here urged ignores the well-established principle that the legislature is not bound,

in order to support the constitutional validity of its regula-
tion, to extend it to all cases which it might possibly reach.
Dealing with practical exigencies, the legislature may be
guided by experience. *Patsone* v. *Pennsylvania*, 232 U. S.
138, 144. It is free to recognize degrees of harm, and it
may confine its restrictions to those classes of cases where
the need is deemed to be clearest. As has been said, it
may 'proceed cautiously, step by step,' and 'if an evil is
specially experienced in a particular branch of business'
it is not necessary that the prohibition 'should be couched
in all-embracing terms.' *Carroll* v. *Greenwich Insurance
Co.*, 199 U. S. 401, 411. If the law presumably hits the
evil where it is most felt, it is not to be overthrown because
there are other instances to which it might have been
applied. *Keokee Coke Co.* v. *Taylor*, 234 U. S. 224, 227.
Upon this principle, which has had abundant illustration
in the decisions cited below, it cannot be concluded that
the failure to extend the act to other and distinct lines of
business, having their own circumstances and conditions,
or to domestic service, created an arbitrary discrimination
as against the proprietors of hotels. *Ozan Lumber Co.* v.
*Union County Bank*, 207 U. S. 251, 256; *Heath & Milligan*
v. *Worst*, 207 U. S. 338, 354; *Engel* v. *O'Malley*, 219 U. S.
128, 138; *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S.
61, 78; *Mutual Loan Co.* v. *Martell*, 222 U. S. 225, 235;
*Central Lumber Co.* v. *South Dakota*, 226 U. S. 157, 160;
*Rosenthal* v. *New York*, 226 U. S. 260, 270; *Barrett* v.
*Indiana*, 229 U. S. 26, 29; *Sturges & Burn* v. *Beauchamp*,
231 U. S. 320, 326; *German Alliance Insurance Co.* v.
*Kansas*, 233 U. S. 389, 418; *International Harvester Co.*
v. *Missouri*, 234 U. S. 199, 213; *Atlantic Coast Line R. R.*
v. *Georgia*, 234 U. S. 280, 289.

For these reasons the judgment must be affirmed.

*Judgment affirmed.*