THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* VICTOR S. RICE, Plaintiff in Error.

*Opinion filed December 23, 1926.*

1. CRIMINAL LAW—*act of 1925 to prevent fraud in sale of leased property is valid.* The act of 1925 requiring the vendor of leased property to have written or stamped upon the lease, when exhibiting the same to a prospective purchaser, the words "Concession granted," whenever the terms of the lease do not exactly state the amount of the rental because of the concession, (Smith's Stat. 1925, p. 1612-13,) is a valid exercise of the police power for the prevention of fraud in the sale of improved city real estate and does not grant special or exclusive privileges by the exclusion of farm property.

2. SAME—*statute creating an offense may make classification.* The legislature may consider degrees of evil and in creating and defining an offense is not bound to pass such a law as will meet every case, and its classification of the objects of legislation is not required to be scientific, logical or consistent if it is reasonably adapted to secure the purpose intended and is not purely arbitrary.

3. SAME—*when conviction will be reversed on evidence.* To justify a finding of guilty on a trial before the court the evidence for the prosecution must be so clear as to convince the court of the guilt of the defendant beyond a reasonable doubt, and where, after giving to the evidence for the prosecution the fullest credit, such is not the case in view of the defendant's evidence, which is corroborated, the judgment of conviction must be reversed and the cause remanded for a new trial.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. GEORGE A. CURRAN, Judge, presiding.

DENEEN, HEALY & LEE, (HARRY W. LIPPINCOTT, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and VIRGIL L. BLANDING, (EDWARD E. WILSON, HENRY T. CHACE, JR., and CLARENCE E. NELSON, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error was charged by information filed in the municipal court of Chicago with a violation of the act providing a penalty for the exhibition to a prospective purchaser or lessee of a lease which does not fairly state the rent being paid because of a rent concession, unless the legend "Concession granted" is stamped across the face of the lease and a memorandum of the amount, extent and nature of the concession is written upon the margin thereof, (Smith's Stat. 1925, p. 1612-13,) and upon a trial before the court was found guilty and sentenced to pay a fine of five dollars. He contends that the judgment should be reversed for the reason that the act is unconstitutional and the evidence does not establish his guilt beyond a reasonable doubt.

The act provides that a rent concession is made within the meaning of the act when, in the case of a written lease of real estate, the lessor agrees to give to the lessee, without express mention thereof in the lease, any credit upon the rent reserved by the lease, and renders it unlawful for any person knowing of such concession to exhibit the lease to any prospective purchaser or lessee of the real estate unless such lease has the legend "Concession granted" stamped across its face and has written upon its margin a memorandum of the amount, extent and nature of the concession. It is provided that the act "shall have no application to farm or agricultural property, or property used as such, nor to any leases or evidences of leasing executed relative thereto."

Plaintiff in error contends that the act is repugnant to section 2 of article 2 of the constitution for the reason that it interferes with freedom of contract, and that it is repugnant to section 22 of article 4 of the constitution for the reason that it grants special and exclusive privileges by the exclusion of farm property from the operation of the act. The argument in support of these propositions is fully answered in *Stewart* v. *Brady,* 300 Ill. 425, *People* v. *Stokes,*

281 id. 159, *Biffer* v. *City of Chicago,* 278 id. 562, and *Keokee Consolidated Coke Co.* v. *Taylor,* 234 U. S. 224, 34 Sup. Ct. 856. The purpose of the legislation is to protect the public from deceit and to prevent fraud in the sale of improved city real estate. Such legislation tends to promote the general welfare by the prevention of frauds, and the authority to adopt it is found in the police power. The legislature may consider degrees of evil and is not bound to pass such a law as will meet every case. Its classification of the objects of legislation is not required to be scientific, logical or consistent if it is reasonably adapted to secure the purpose intended and is not purely arbitrary. That the rental value of city property, and particularly of apartment buildings, affects materially the sale price of such property and that the rental value of farm lands has less to do with the price of such lands are facts generally known and undoubtedly furnished the legislature the basis for exempting farm lands from the provisions of this act. According to the preamble of the act the legislature recognized an existing evil with respect to rent concessions in connection with the leasing of city property but it found no such evil existing in the leasing of farm lands. The legislation is free from the constitutional objections made.

Joseph J. Jerger, the complaining witness, entered into a contract dated January 2, 1926, to purchase a two-apartment building known as 10157 South Seeley avenue, Chicago, from plaintiff in error for the sum of $31,000. The contract stated that the first apartment in the building was then rented for $180 a month. Edward B. Lucius occupied this apartment under a written lease and plaintiff in error occupied the second apartment. When the deal was completed, in February, plaintiff in error delivered the lease to Jerger. The lease did not mention a rent concession and the legend "Concession granted" was not stamped across the face of the lease. It was for a term beginning October 1, 1925, and ending September 30, 1926, with a stipu-

lated rental of $180 a month, payable monthly in advance. There is some dispute as to whether the lease was delivered just before the delivery of the deed and the payment of the money or after the payment of the money and at the same time the deed was delivered. When Jerger sought to renew the lease Lucius told him that he had been paying $165, and that he had never paid $180 as provided in the lease.

On the trial Lucius testified that he is a practicing attorney; that he had occupied the first apartment in the building in question for more than a year; that prior to October 1, 1925, he had a lease for the apartment stipulating a rental of $165 a month; that he sought to renew this lease at a lower rent but plaintiff in error refused to reduce the rent; that they finally agreed upon a rental of $165 a month, but when plaintiff in error submitted the new lease the rent was stated to be $180; that he told plaintiff in error it was unlawful to recite in a lease a rental larger than that actually to be paid, but plaintiff in error refused to lease the apartment on any other terms; that plaintiff in error suggested that witness send him a statement for legal services for $175, to be paid by crediting $90 on the first month's rent and $90 on the second, $5 cash to be paid to balance the accounts the second month. Lucius testified further that he had rendered no legal services to plaintiff in error and that he had no arrangements with him concerning any litigation which would entitle him to a fee.

Plaintiff in error testified that no concessions were made with respect to the rent stipulated in the lease; that Lucius had paid $180 a month for each and every month the apartment was occupied by him since the lease was made; that Lucius rendered some legal services for him in connection with some personal taxes which were charged against his father's estate and that his charge for these services was $175; that he asked Lucius to deduct $90 of the amount from his check for the October rent and $85 from his November check; that Lucius wrote the November check for

$90, and that when witness mentioned the matter to him he gave witness a five-dollar bill.

In the record there is a letter dated September 24, 1925, addressed to plaintiff in error and reading as follows:

*"Dear Vic*—I enclose herewith lease for apartment executed in duplicate. Will you please sign one copy and return to me? I enclose also bill for legal services rendered to date. I will appreciate your paying half of this on October 1st and the balance on November 1st.
"Very truly yours,
EDW. B. LUCIUS."

With this letter was inclosed a statement on the stationery of Lucius, Buehler & Lucius, attorneys at law, addressed to plaintiff in error and reading: "To Edward B. Lucius, Dr. To legal services rendered to date, $175." September 29, 1925, plaintiff in error replied to Lucius as follows:

*"Dear Ed*—With reference to your bill for $175 dated September 24th. As you can appreciate, my ready cash is hit pretty hard in installing the new oil burner in our building, and I will appreciate it if you will take payment on this bill by deducting $90 from your rent check of October 1st and the balance, $85, from your rent check of November 1st. Trusting this is satisfactory,
"I am sincerely yours,
VICTOR S. RICE."

This is a criminal prosecution, and in order to justify a finding of guilty the evidence for the prosecution must be so clear as to convince the court of the guilt of plaintiff in error beyond a reasonable doubt. The condition of the record in this case is such that the court is left in doubt concerning the transaction between plaintiff in error and Lucius. If Lucius did render legal services for plaintiff in error in connection with a claim for personal taxes against his father's estate there ought to be some public records showing what was done in the matter. The formal letters appearing in this record corroborate the testimony of plaintiff in error and do not accord with the testimony of Lucius. Giving to the evidence for the prosecution the fullest credit,

it cannot be said that it is entitled to more credit than the testimony of plaintiff in error.

Inasmuch as the guilt of plaintiff in error is not established beyond a reasonable doubt, the judgment·must be reversed and the cause remanded for a new trial.

*Reversed and remanded.*