## STATE v. CARL ROGERS.

---

(*April* 26, 1962.)

LYNCH, J., sitting.

*Thomas Herlihy, III*, Deputy Attorney-General, for the State.

*H. Alfred Tarrant, Jr.* (Edward W. Cooch, Jr., with him on the brief) for Defendant.

Superior Court for New Castle County, Criminal Action, No. 46, 1962.

LYNCH, Judge.

Defendant, Carl Rogers, stands indicted by the Grand Jury of New Castle County on a charge of operating a barber shop on Sunday in violation of 24 *Del. C.* § 415. This section reads as follows:

"§ 415 Sunday closing; penalty; jurisdiction and cognizance of offenses.

"Whoever carries on or engages in the business of shaving, haircutting or other work of a barber, or whoever opens or allows to be open his barber shop, or place where such business is done, for the purpose of carrying on his said business on the first day of the week, commonly called Sunday, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than $20.00 nor more than

$75.00 and on failure to pay such fine and costs shall be imprisoned not exceeding ten days."

This section is now part of a new chapter (4) added to Title 24 of the Delaware Code by action of the General Assembly in enacting Vol. 53, *Del. Laws*, Ch. 152, approved by the Governor on July 26, 1961.

Section 401 of the cited title, entitled "Definitions", excludes beauticians from its operation with the following sentence:

" 'Practicing the occupation of barber' includes the shaving or trimming of the beard and the cutting of the hair of any person for hire or reward, *provided that this chapter shall not apply to beauticians[1] cutting or trimming the hair of females."* (Emphasis supplied.)

There is no *general* Sunday closing or "blue" law in Delaware. The only laws in Delaware pertaining to an observance of Sundays are contained in Title 28 of the *Delaware Code.* Section 906 relates to horse racing, public auctions, public dances and public entertainment within corporate limits of cities and towns. Section 151 prohibits Sunday boxing and § 1139 prohibits Sunday bingo.

At the time defendant was arraigned his attorneys filed a motion to dismiss the indictment, contending that the statute, 24 *Del. C.*, Ch. 4, and particularly § 415, is unconstitutional as violative of the due process and equal protection clauses of the 14th Amendment to the U. S. Constitution and Article 1, Section 7 of the Delaware Constitution, *Del. C. Ann.*

---

[1]Senate Bill No. 251 is presently pending before the General Assembly. It is a measure to enact comparable laws to Beauticians and Beauty Shops, such as are to be found in the Barber Law. This pending measure contains no requirement of Sunday closing of Beauty Shops.

The constitutionality of state laws prohibiting barbers from operating on Sunday has been considered in a number of cases. These cases are collected in a general annotation dealing with barber statutes in 20 *A. L. R.* 1111, as supplemented in 98 *A. L. R.* 1088. The decisions show a split of authority; not all of them are precisely analogous to this case and the statutes vary from the Delaware statute.

Defendant emphasizes his arguments by contending that in the absence of a *general* Sunday closing law, a statute singling out barbers and requiring them to close on Sunday is an arbitrary and discriminatory use of the state police power and hence unconstitutional because it deprives barbers of their right to due process of law. Defendant cites and relies, in great part, on *State v. Danberg,* 1 *Terry* 136, 40 *Del.* 136, 6 *A.* 2d 596 (Court of General Sessions, 1939). In that case the Court of General Sessions considered the constitutionality of a statute prohibiting barbers located in the City of Wilmington from advertising prices, limiting hours of business, requiring the adjustment of curtains or shades on shops in a certain manner, and prohibiting business on Sundays and certain holidays. The State, in this case, contends that the *Danberg* case is distinguishable. I agree. The Barber Statute considered in *Danberg* only applied to barbers in the City of Wilmington; it was not applicable throughout the state as is the law now before the Court. It was shown that the provision that prohibited barbers from working on Sundays and certain holidays and not past certain hours was not passed for the health, welfare and safety of barbers, because it provided an exception to such prohibitions if a barber obtained a special permit requiring payment of a hundred dollar fee. The other sections relating to prices and advertising show that the entire statute was not a health and welfare measure. The provisions about adjusting shades or curtains obviously had no relation to the health and welfare of barbers. The statute was clearly, in my opinion, an economic measure and it was not passed for the purpose of protecting the health of barbers.

The State, on the other hand, points out that the statute at hand is certainly related to the health and welfare because it is a cessation of work statute and not a special statute to aid the economics of barbers such as appeared in *Danberg*. Consequently, the General Assembly, the State argues, when it passed the statute *sub judice,* had the intent of providing Sunday as a day of rest, *i.e.,* to enforce a cessation from labor on one day in seven, and, therefore, was intended to promote the health and good order of the public and the barbers themselves, 83 *C. J. S.* Sunday § 3, p. 801, and such a law, says the State is not in violation of the due process clause and should be sustained.

█ Under the Delaware Constitution the power of the General Assembly, as the repository of all legislative power, 1897 Const., Art. 2, Section 1, is full, limitless and unrestrained; it may legislate in any manner on any subject it sees fit, unless there is some constitutional limitation, express or implied. *State ex rel. Craven v. Schorr,* 11 *Terry* 365, 131 *A.* 2d 158, 161 (Sup. Ct. 1957), affirming *State ex rel. Craven v. Shaw,* 11 *Terry* 193, 126 *A.* 2d 542, 546 (Super. Ct. 1956); *Collison v. State ex rel. Green,* 9 *W. W. Harr.* 460, 468, 2 *A* 2d 97, 100, 119 *A. L. R.* 1422 (Sup. Ct. 1938); *State v. Grier,* 4 *Boyce* 322, 88 *A.* 579 (Gen. Sess. 1913); and *State ex rel. McVey v. Burris,* 4 *Penn.* 3, 49 *A.* 930, 931 (Sup. Ct. 1901). In the last cited case the Court stated:

"* * * The legislature of each state represents the sovereignty of the people, and it may pass any laws not inconsistent with the constitution of this state or of the United States.* * *"

The defendant, as has been previously noted, contends the statute under attack is unconstitutional as violative of the due process and equal protection clauses of the 14th Amendment to the U.S. Constitution and Article 1, Section 7, the Delaware Constitution of 1897.

These constitutional issues have heretofore been determined,—and adversely to defendant.

The United States Supreme Court upheld a Maryland Sunday closing law, which specifically prohibited barber shops and certain other businesses from opening on Sundays, in *McGowan v. State of Maryland*, 366 *U. S.* 420, 81 *S. Ct.* 1101, 6 *L. Ed.* 2d 393 (1961). The statute, however, allowed other businesses to remain open on Sunday. The Supreme Court closely examined the purposes of such a law, and disposed of the constitutional arguments contrary to defendant's contentions here.

Several opinions by Mr. Justice Field were quoted. At 81 *S. Ct.* at 1110, 1111, it was said by the Supreme Court:

"Mr. Justice Field wrote in *Soon Hing v. Crowley, supra,* 113 *U. S.* 703, at page 710, 5 *S. Ct.* 730, at page 734 [28 *L. Ed.* 1145]:

" 'Laws setting aside Sunday as a date of rest are upheld, * * * from its [the State] right to protect all persons from the physical and normal debasement which comes from uninterrupted labor. Such laws have always been deemed beneficent and merciful laws, especially to the poor and dependent, to the laborers in our factories and workshops and in the heated rooms of our cities; and their validity has been sustained by the highest courts of the states.'

"While a member of the California Supreme Court, Mr. Justice Field dissented in *Ex parte Newman, supra,* 9 *Cal.* [502] at pages 519-520, 528, saying:

" 'Its requirement is a cessation from labor. *In its enactment, the Legislature has given the sanction of law to a rule of conduct, which the entire civilized world recognizes as essential to the physical and moral well-being of society. Upon no subject is there such a concurrence of opinion, among philosophers, moralists and statesmen of all nations, as on the*

*necessity of periodical cessations from labor. One day in seven is the rule, founded in experience, and sustained by science. * * * The prohibition of secular business on Sunday is advocated on the ground that by it the general welfare is advanced, labor protected, and the moral and physical well-being of society promoted.'* "* (Emphasis supplied.)

. *Ex parte Northrup*, 41 *Ore.* 489, 69 *P.* 445 (1902) and *People v. Havnor*, 149 *N. Y.* 195, 43 *N. E.* 541, 31 *L. R. A.* 689 (1896) are state court cases, which, with the *McGowan* case, dispose of the several constitutional arguments advanced by defendant in his efforts to strike down, as unconstitutional, the statute under consideration. No good purpose would be served by a lengthy discussion of these cases. It is sufficient to say they are determinative of the arguments advanced.

The exclusion of beauticians and beauty shops from the operation of the statute is of no significance. In *McDermott v. City of Seattle, D. C.*, 4 *F. Supp.* 855, at pp. 856-857:

"The charge that the ordinance is discriminatory in that beauty parlors and hairdressing establishments are not included, fails. The difference between the activity in beauty parlors and the general practice of barbering, as defined by statute (sections 8278-1 to 8278-4, *Rem. Rev. Stat. of Washington*), is obvious. Any reasonable basis for classification, not purely arbitrary is within the legislative power, and, *if a basis can be reasonably conceived, such must be assumed at the time of enactment, even if not made with mathematical nicety, resulting in some inequality. Lindsley v. Natural Carbonic Gas Company*, 220 *U. S.* 61, 31 *S. Ct.* 337, 55 *L. Ed.* 369, *Ann. Cas.* 1912C, 160. *If a law suppresses an evil where it is most felt, the prohibition need not be all-embracing. Keokee Consolidated Coke Company v. Taylor*, 234 *U. S.* 224, 227, 34 *S. Ct.* 856, 58 *L. Ed.* 1288. Failure to extend the ordinance to beauty parlors, etc., which have their own conditions and circumstances, does not create an arbitrary discrimination against barber shops." (Emphasis supplied.)

*Feldman v. Cincinnati, D. C.,* 20 *F. Supp.* 531 (1937) and *People v. Stiegler,* 160 *Misc.* 463, 290 *N. Y. S.* 732 (1936) are to the same effect. In the last cited case the Court said (290 *N. Y. S.* at 735):

"Because it might have been applied to hairdressers and beauty culturists is not enough to make it unconstitutional as applied to the barbers at whom it is directed. 'If the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.' *People ex rel. Bryant v. Sheriff of Erie County,* 123 *Misc.* 859, 863, 206 *N. Y. S.* 533, 537, quoting from *Miller v. Wilson,* 236 *U. S.* 373, 35 *S. Ct.* 342, 59 *L. Ed.* 628, *L. R. A.* 1915F, 829."

I am of the opinion that the General Assembly may reasonably classify barbers and beauticians as two separate professions for the purpose of regulation. There are differences in conditions and circumstances between the two professions, and the General Assembly may determine to first hit the evil where there exists a more urgent need for the public welfare.

After a careful consideration of the statute under attack, and the many cases that have been cited, I entertain no doubt about the power of the General Assembly to enact the statute and the defendant's attacks on the constitutionality of the law fail. An Order may be presented denying defendant's motion to dismiss the indictment.