## Commonwealth v. Wall

*Jacques H. Fox*, Assistant District Attorney, and *Raymond R. Stuart*, District Attorney, for Commonwealth.

*Edwin E. Lippincott, 2nd*, for defendants.

SWENEY, P. J., February 17, 1958.—This matter was heard by Sweney, P. J., and, at his direction, the legal questions involved were argued before the court en banc. The case is now ready for decision.

All defendants were drivers of trucks owned by DeVault Contracting Company, Phoenixville; the trucks were being used to haul dirt from a quarry to an area to be filled near State Road and Sproul Road in Springfield Township, this county. Each truck was of a different size and classification.

The truck driven by Charles F. Wall was registered as "ZZ". Subsection (*f*) of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §453 (*f*), reads as follows:

"No vehicle shall be operated upon any highway with weight in excess of eighteen thousand (18,000) pounds upon any axle less than seventy-two (72) inches from any other axle, or with weight in excess of twenty-two thousand four hundred (22,400) pounds upon any other axle, or with weight in excess of eight hundred (800) pounds upon any one wheel for each nominal inch of width of tire on such wheel."

There is no proof before us as to the distance between axles and we must assume that the weight allowed per axle is 22,400 pounds. To this there must be added three percent allowable overload or 672 pounds. This makes a total allowable load of 23,072 pounds. The weighing showed a gross weight carried on the foremost axle of the tandem to be 22,610 pounds. Under the rule which we here apply, this was not overweight, and we must sustain the appeal in this case.

The truck, driven by Robert Ganley, was an International, bearing Pennsylvania Registration ZZ-9-AJ. The weighing of this truck shows a gross weight carried of 53,490 pounds or overweight of 6,490 pounds. The credible testimony is that the brakes were off and the engine not running when the weighing took place; also that the site of the weighing was flat and that the officers had no difficulty in obtaining a proper reading.

The truck, driven by Darrell Francis Zeeb was an Autocar, bearing Pennsylvania Registration Z350-D. The weighing showed a gross weight carried on the rear axle of 30,810 pounds or overweight of 8,410 pounds. The testimony disclosed that one of the tires which had to be mounted on the weighing machine was flat, that to keep the truck on the scale, triangular wedges had to be used, the motor was kept running and the brakes were on. The officers said that they were able to take a reading, which disclosed the truck was overloaded.

Counsel for defendants argues strenuously that the portable scales, known as "Loadometers", are not accurate and that the appeals in these cases should be sustained. We are not impressed with this argument; portable scales may be used in accordance with the act of assembly. In addition, there is no proof before us that the scales used by the State Police in these cases were not accurate or needed adjustment.

Furthermore, it is clear what happened here. The trucks had been weighed on platform scales at the quarry where the fill was being secured. It had been ascertained that a certain number of buckets from the steam shovel would fill each truck, the platform scales at the quarry broke, rain had fallen and the ground was saturated. The same number of buckets of saturated earth was placed in the trucks; naturally, an overload resulted.

Counsel for defendants further contends that the Act of June 1, 1956, P. L. 1999, 75 PS §453, is unconstitutional (1) because it takes property without due process of law and (2) because the fines are excessive. With this contention, we cannot agree.

Highways are subject to the absolute direction and control of the Commonwealth. The right to use a public highway for travel or in the transportation of merchandise is not unrestricted; it is for the Commonwealth, acting through the legislature, to direct the conditions under which this limited right shall be exercised: Commonwealth v. Funk, 323 Pa. 390, 394, 395 (1936).

"The Vehicle Code does not state expressly why an overweight vehicle is prohibited from movement on a Pennsylvania highway without a permit. There are, however, two obvious reasons. The first is that an overweight vehicle may work serious damage to a road and the statute authorizes the Department of Highways to control the movement of heavy equipment to keep damage to a minimum. The second is that overweight vehicles are an obstacle to the free movement of traffic, thereby creating traffic hazards. . . . The purpose of the statutory enactment is plain; viz., to control by a state agency the movement of large vehicles on highways in the interest of the public safety. The statute enacted was well within this police power of the Commonwealth": McDonald v. Pennsylvania R. Co., 210 F. 2d 524, 528 (1954).

In Lattava Bros., Inc., v. Hudock, 119 F. Supp. 587 (1953), it was argued that the weight restrictions were wholly unrelated to safety. In finding that the maximum gross weight limit was a reasonable exercise of the police power, the court stated as one of its conclusions: "A state, in the exercise of its police power and in the absence of Congressional action," in order to promote the safety of the traveling public upon its

highways and in order to conserve their use, may constitutionally "impose reasonable restrictions upon weight and size of vehicles traveling over its highways, equally applicable to intrastate and interstate commerce."

In Commonwealth v. Burall, 146 Pa. Superior Ct. 525, 529 (1941), the court stated: "The purpose of statutes prohibiting the use of public highways by motor vehicles of excessive weight is to prevent injury to the public property in the form of damage to roads, bridges, etc., and further to insure the safety of persons traveling such highways."

The law is clear that one who attacks the unconstitutionality of a statute may complain only of those provisions which injure him: Lattava Bros., Inc., v. Hudock, supra. No one is entitled to be heard on a constitutional point which does not prejudically affect him in the case under view.

Defendants argue, under lack of due process that section 5 of the act provides for the impounding of a vehicle, and under certain circumstances, disposal "before the owner of the truck (who is the real party involved) receives any notice of the offense, a trial is held, fine and costs imposed and the vehicle impounded. If the fine and costs are not paid, the truck may be sold—even though the owner may have never consented to the overloading, never have an opportunity to appear at the hearing, and may be without knowledge of it."

These trucks were impounded after failure to pay assessed fines. Defendants eventually posted security within the provisions of the act and got their trucks back. In these circumstances on this appeal, defendants cannot successfully argue a violation of due process. Had the trucks been sold, without notice to the real owner, then we might have had a constitutional question before us.

Counsel for appellants cites a definition of "due process" found in Hess v. Westerwick, 366 Pa. 90 (1950). In the Hess case, the land of a delinquent taxpayer was sold at a ridiculously low price on account of the delinquencies without notice being sent by the authorities to the landowner, although the act provided for such notice to be sent. The court held that failure to give notice constituted deprivation of property without due process. It appears that had notice been properly sent and not received, the tax sale would have been valid, placing the risk of miscarriage of the mails upon the delinquent taxpayer.

While the record before us does not disclose whether or not proper notice was given the truck owner, said owner has waived his right to complaint about any technical procedural deficiencies by taking these appeals.

Defense counsel also argues the fines under the act are excessive and therefore the act is unconstitutional. As his reason for this, counsel says that the fines "can become so great as to amount to complete confiscation." However, as we view the cases before us, we cannot hold that the fines, as levied, are confiscatory. It must be borne in mind that we view this legislation as a proper exercise of the police power, that a responsibility is placed upon truckers to comply or to face penalties and that the three percent overweight allowance and special permits for overweight vehicles negates the argument that the act is so arbitrary as to shock the conscience of the court. Furthermore, if there are concurrent violations of more than one of the clauses, "The penalty imposed shall be for violation of that clause which produces the greatest fine, but no penalty shall be imposed for violation of any other clause."

It would appear to us that here we have a flagrant disregard of the statute covering weight regulations

and if stiff fines will tend to correct the evil, then such fines are proper.

### Decree

And now, February 17, 1958, it is ordered and decreed that the appeal of Charles F. Wall be, and the same is hereby, sustained; the said Charles F. Wall is found not guilty and is hereby discharged.

It is further ordered and decreed that the appeal of Robert Ganley be, and the same is hereby, dismissed; the said Robert Ganley is found guilty and is hereby sentenced to pay a fine of $600 and costs of prosecution; an exception is allowed defendant, Robert Ganley.